UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LOUIS LOVELL DEBOSE,

Petitioner,

v.

RAYMOND MADDEN, Warden,

Respondent.

Case No.: 20-CV-1132-MMA(WVG)

**REPORT AND RECOMMENDATION ON RESPONDENT'S MOTION TO DISMISS**

**[Doc. No. 6.]**

Petitioner, a state prisoner, claims his constitutional rights were violated during a prison administrative rules violation hearing that resulted in a 90-day custody credit loss. Through this federal habeas action, he seeks invalidation of the disciplinary proceedings and restoration of the lost custody credits. As explained below, federal habeas corpus jurisdiction is lacking, and, in any event, the Petition would be untimely. Accordingly, this Court RECOMMENDS that Respondent's motion to dismiss be GRANTED and the Petition be DISMISSED without leave to amend.

## I. BACKGROUND

At the time of the underlying disciplinary action, Petitioner was a state prisoner at Ironwood State Prison. He is now housed at Centinela State Prison, where he continues to

serve a sentence consisting of three consecutive terms of 25-years-to-life, plus 31 years and 8 months.[1] His minimum eligible parole date ("MEPD") is October 26, 2065.[2]

In August of 2017, Petitioner was issued a rules violation report ("RVR") for obstructing the view into his cell with cardboard and, as a result, hindering prison staff's ability to complete scheduled inmate counts.[3] The RVR was eventually adjudicated against Petitioner, and a 90-day loss of good-time credits was assessed against him.

Petitioner contends the RVR hearing violated his constitutional rights because his request to have a staff member appear for examination by Petitioner was denied. He also claims he was denied the ability to present documentary evidence and was denied an impartial decisionmaker. He seeks restoration of the lost credits.

Petitioner has exhausted his administrative remedies, which resulted in the disciplinary action being upheld. He then filed habeas corpus petitions in various state courts. The Riverside County Superior Court upheld the disciplinary decision on February 27, 2019, and the California Court of Appeal summarily denied the petition on May 20, 2019. The Supreme Court of California thereafter summarily denied the petition on March 11, 2020. The instant Petition was constructively filed on June 10, 2020, the date Petitioner signed the Petition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to bring a motion arguing that a complaint "fail[s] to state a claim upon which relief can be granted." The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light

---

[1] The Court takes judicial notice of all state court documents lodged by Respondent. *Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2001).

[2] An MEPD is "the earliest date on which an Indeterminate Sentence Law or life prisoner may legally be released on parole." 15 Cal. Code Regs. § 3000.

[3] The minutiae of the underlying disciplinary proceedings are not relevant for resolution of the pending motion to dismiss given the Court's conclusion that habeas jurisdiction is lacking and that, in any event, the Petition is untimely.

of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). More specifically, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim meets this requirement when the facts pled "allow . . . the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* at 677 (citing *Twombly*, 550 U.S. at 557). Although a claim need not be probable on its face, there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "merely consistent with a defendant's liability" do not equate to a facially plausible claim. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678. This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## III. DISCUSSION

### A. Federal Habeas Corpus Jurisdiction is Lacking

Because success on the merits here would not necessarily lead to Petitioner's immediate or speedier release, his claims are "outside the core of habeas corpus," he may not proceed with this habeas action, and he must bring the claims, if at all, as a separate civil rights action under 42 U.S.C. section 1983 in the Central District of California.

**1. Legal Background: Federal Habeas Corpus Jurisdiction**

A state prisoner's claims either lie at "the core of habeas corpus" and are subject to the provisions of the Anti-terrorism and Effective Death Penalty Act, or they "challenge[] any other aspect of prison life" and are subject to the provisions of the Prison Litigation Reform Act and "must be brought, if at all, under § 1983." *Nettles v. Grounds*, 830 F.3d 922, 931 (9th Cir. 2016) (en banc).

Generally, a prisoner's claims are within the core of habeas corpus—and federal habeas jurisdiction thus exists—if they challenge the fact or duration of his conviction or sentence. *See id.* at 934; *Ramirez v. Galaza*, 334 F.3d 850, 858 (9th Cir. 2003). However, if success on the merits of a prisoner's claim would not "necessarily lead to immediate or speedier release from custody," they fall outside the "core of habeas corpus" and "must be pursued (if at all) in a civil rights action under 42 U.S.C. § 1983." *Nettles*, 830 F.3d at 927-28; *see, e.g.*, *Borstad v. Hartley*, 668 F. App'x 696, 697 (9th Cir. 2016) (success on petitioners' claims that the lengthening of intervals between parole hearings caused by Marsy's Law violated their rights under Ex Post Facto Clause "would not necessarily result in a shortening of their sentences.").

In crafting jurisprudence on this subject, the Supreme Court "has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original). The Court's line of cases "taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82 (emphasis in original).

**3. Discussion**

Here, Petitioner, as with the California state prisoner in *Nettles*, is serving an indeterminate sentence with a minimum eligible parole date that has not yet passed and remains in the far distant future. And, as in *Nettles*, Petitioner claims that his federal constitutional rights were violated by the prison disciplinary action. However, the Ninth Circuit found that Nettles's claims did not lie within the core of habeas corpus because custody credits earned by inmates serving an indeterminate term "go toward advancing only their minimum eligible release date, not their actual release from prison," and that success on the merits "would not necessarily lead to immediate or speedier release because the expungement of the challenged disciplinary violation would not necessarily lead to a grant of parole." *Nettles*, 830 F.3d at 934-35 ("A rules violation is merely one of the factors shedding light on whether a prisoner" is suitable for parole); *see also Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003) ("Here, if successful, Ramirez will not necessarily shorten the length of his confinement because there has been no showing by the State that the expungement [of the disciplinary infraction] Ramirez seeks is likely to accelerate his eligibility for parole."); *In re Jenkins*, 240 P.3d 260, 269 (Cal. 2010) (noting that a prisoner serving an indeterminate sentence has his or her minimum parole eligibility date advanced though custody credits, but their actual release from prison is wholly dependent on the parole decision).

It is true that the challenged disciplinary findings *could* affect the Parole Board's future assessment of Petitioner's suitability for parole, and, if he is ever found suitable for parole, the lost credits *could* affect the calculation of his release date. Nevertheless, it is not the case that an expungement of the disciplinary findings here would *necessarily* spell speedier release. For example, Petitioner may never be found eligible for parole based on other grounds. Moreover, without knowing how long Petitioner will serve before the Board finds him eligible for parole, if ever, it is speculative whether the restoration of his credits would affect the duration of his confinement. Thus, expungement of the challenged disciplinary decision and restoration of any lost credits would not *necessarily* accelerate

Petitioner's release from custody. Under these circumstances, the effect of expungement or credit restoration on the duration of confinement is "too attenuated" to support habeas jurisdiction. *See Nettles*, 788 F.3d at 1003.

In sum, because success on the merits here would only advance Petitioner's minimum eligible parole date in 2065 but not "necessarily" have an effect on the duration of his confinement, his claims do not lie at "the core of habeas corpus" and "must be brought, if at all, under § 1983." *Id.* at 927.

**B.    The Petition Should Not Be Construed as a Section 1983 Action**

Although the Court may construe a habeas petition that presents claims that do not lie at the core of habeas as a section 1983 action "after notifying and obtaining informed consent from the prisoner," the Court should not so construe this action. *See Nettles*, 830 F.3d at 936 ("If the complaint is amenable to conversion on its face, meaning it names the correct defendants and seeks the correct relief, the court may recharacterize the petition so long as it warns the pro se litigant of the consequences of the conversion and provides an opportunity for the litigant to withdraw or amend his or her complaint."). There are no allegations against the named Respondent in this action (the warden of Centinela State Prison, the correctional institution where Petitioner is currently confined, not Ironwood State Prison, where he was confined at the time of the disciplinary action), and it is unclear who Petitioner seeks to hold personally responsible for the alleged denial of his federal rights. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

Additionally, venue for such a section 1983 action lies in the Central District of California and not in the Southern District of California. A "civil action may be brought in - (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of

property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b). Here, there is no indication that any State actors mentioned in the Petition reside in this District, and the entirety of events of the underlying disciplinary action transpired at Ironwood State Prison, which is located in Blythe, California within Riverside County and thus covered by the Central District of California. Petitioner may file a section 1983 action in the Central District of California if he wishes to do so.

**C. Timeliness of the Petition**

Assuming, for the sake of argument, that Petitioner's claims were within the core of habeas and he could proceed with the Petition, the Petition would nonetheless be untimely, would not be rendered timely by tolling principles, and would be subject to dismissal without leave to amend on that basis.

**1. The Petition Would Be Facially Untimely**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. 28 U.S.C. § 2244(d)(1). Section 2244's one-year limitations period also applies to habeas petitions filed by persons in "custody pursuant to the judgment of a State court," where the petition challenges a pertinent administrative decision rather than a state court judgment. *Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004).

For prisoners challenging administrative decisions such as the revocation of good time credits, the limitations period is not calculated pursuant to section 2244(d)(1)(A) but calculated pursuant to section 2244(d)(1)(D), which provides that the period begins to run on the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence. *Mardesich v. Cate*, 668 F.3d 1164, 1172 (9th Cir. 2012) ("[W]hen a habeas petitioner challenges an administrative decision affecting the 'fact or duration of his confinement,' AEDPA's one-year statute of limitations runs from when the 'factual predicate' of the habeas claims 'could have been discovered through the exercise of due diligence.'") (citing 28 U.S.C. § 2241(d)(1)(D)). "As a general rule, the state

agency's denial of an administrative appeal is the 'factual predicate' for . . . habeas claims [challenging administrative decisions]." *Id.*

Here, Petitioner received the most recent third-level appeal decision on the merits of his administrative challenge to the RVR on February 15, 2018. Thus, he discovered the predicate to his claims on or about that date. He constructively filed the Petition on June 10, 2020, the date he signed and served it by mail. *See Roberts v. Marshall*, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (noting that under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the Court deems the pleading constructively filed on the date it is signed). Thus, without tolling, the Petition is plainly untimely, as more than two years passed between the date of the third-level appeal and the Petition's constructive filing. The Court now turns to whether statutory tolling principles render the Petition timely.

**2.  Statutory Tolling Would Not Save the Untimely Petition**

The limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Generally, this means that the statute of limitations is tolled during the time after a state habeas petition has been filed, but before a decision has been issued. *Nedds, v. Calderon*, 678 F.3d 777, 780-81 (9th Cir. 2012). However, the limitations period is not tolled for the period between finality of the appeal and the filing of an application for post-conviction or other collateral review in state court since no state court application is "pending." *Nino v. Galaza*, 183 F.3d 1003, 1006-07 (9th Cir. 1999), overruled on other grounds by *Carey v. Saffold*, 536 U.S. 214, 225-27 (2002). Nor is there tolling between finality of a direct appeal and the filing of a federal petition. *Nino*, 183 F.3d at 1006-07.

Here, Petitioner filed his initial state court petition in Riverside County Superior Court on January 23, 2019—or 342 days after the third-level appeal decision issued on February 15, 2018. This left 23 days remaining in the limitations period. The statute of limitations was then tolled until the denial of his California Supreme Court petition on

March 11, 2020. However, Petitioner did not file the instant Petition until June 10, 2020, an additional 91 days after the Supreme Court's denial. The two time periods during which the statute of limitations was running total 433 days. Accordingly, even with statutory tolling applied, the one-year statute of limitations period expired 68 days before the Petition was constructively filed.

Based on the foregoing, the facially untimely Petition would not be rendered timely by statutory tolling for periods during which state habeas petitions were pending. The Court now turns to whether Petitioner is entitled to equitable tolling of the limitations period.

**3. Petitioner Would Not Be Entitled to Equitable Tolling**

In addition to the statutory tolling provided for by section 2244(d)(2), the "AEDPA limitations period may be tolled" when it is "equitably required." *Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011) (citations omitted). However, the "threshold necessary to trigger equitable tolling is very high." *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (citation and internal quotation marks omitted).

The limitations period may be equitably tolled if a petitioner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented him from timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). An extraordinary circumstance must be more than mere "'oversight, miscalculation or negligence on [the petitioner's] part.'" *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)). Rather, Petitioner must show that some "external force" "stood in his way." *Waldron-Ramsey*, 556 F.3d at 1011. "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule." *Lakey v. Hickman*, 633 F.3d 782 (9th Cir. 2011) (citations and internal quotations omitted). It is Petitioner's burden to demonstrate that he is entitled to equitable tolling. *Espinoza-Matthews v. People of the State of Cal.*, 432 F.3d 1021, 1026 (9th Cir. 2005).

Courts are expected to "take seriously Congress's desire to accelerate the federal habeas process." *Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1289 (9th Cir. 1997), overruled in part on other grounds by *Calderon v. U.S. Dist. Ct.*, 163 F.3d 530 (9th Cir. 1998); *see also Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir.2002) (describing the Ninth Circuit's standard as setting a "high hurdle" to the application of equitable tolling). To this end, "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied[.]" *Holland*, 560 U.S. at 652. Whether a party is entitled to equitable tolling "turns on the facts and circumstances of a particular case." *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003).

Here, there is no indication that any external forces stood in Petitioner's path to timely filing the Petition. In his opposition to the motion to dismiss, Petitioner spends his entire argument in support of timeliness on statutory tolling and does not argue he is entitled to equitable tolling. Accordingly, there is no basis from which to conclude that Petitioner is entitled to equitable tolling. The Court now turns to whether the Court should accept the untimely Petition in consideration of justice principles.

**4. There Would Not be Any Miscarriage of Justice**

A federal court may hear the merits of untimely claims if the failure to hear the claims would constitute a "miscarriage of justice." *See McQuiggin v. Perkins*, 569 U.S. 383, 391-93 (2013) (holding that miscarriage of justice (actual innocence) showing applies to claims filed after the AEDPA statute of limitations has run, as well as to successive, abusive and procedurally defaulted claims); *Lee v. Lampert*, 653 F.3d 929, 931 (9th Cir. 2011) (en banc). By the traditional understanding of habeas corpus, a "miscarriage of justice" occurs whenever a conviction or sentence is secured in violation of a constitutional right. *See Smith v. Murray*, 477 U.S. 527, 543-44 (1986). However, in *Schlup v. Delo*, the Supreme Court limited the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

In order to pass through the narrow *Schlup* gateway, "a petitioner must produce sufficient proof of his actual innocence to bring him 'within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Id.* at 314-15 (omission in original) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). The evidence of innocence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 316. A petitioner must support his claims "with new reliable evidence whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

Here, no apparent miscarriage of justice exists, and the Court sees no "proof of [Petitioner's] actual innocence to bring him 'within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup*, 513 U.S. at 314-15. Accordingly, this very narrow exception would not save the untimely Petition.

**5. Conclusion**

Ultimately, even if federal habeas jurisdiction existed here, the Petition would be untimely and not subject to either statutory or equitable tolling principles. And because there would be no apparent miscarriage of justice, the untimely Petition would be subject to dismissal without leave to amend even if habeas corpus jurisdiction existed here.

## IV. CONCLUSION

This Court RECOMMENDS that Petitioner's motion to dismiss be GRANTED and the Petition be DISMISSED without leave to amend.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b).

IT IS ORDERED that **no later than January 29, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties. The document shall be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties **no later than February 12, 2021**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: December 9, 2020

Hon. William V. Gallo
United States Magistrate Judge